UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                          :

TRUSTEES OF THE NEW YORK CITY       :
DISTRICT COUNCIL OF CARPENTERS    :
PENSION FUND, et al.,                     :
                    Petitioners,  :
                                     :

           -against-               :
                                     :

HIGH PERFORMANCE FLOORS INC.,     :
                    Respondent.  :
                                     :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/06/2016

15 Civ. 0781 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

      Petitioners[1] move to confirm a March 5, 2013, arbitration award in their favor against

Respondent High Performance Floors, Inc. and request attorneys' fees in connection with this

proceeding. Respondent opposes the motion and cross-moves to vacate the award and obtain its

own attorneys' fees and costs. For the reasons below, Petitioners' motion is granted, and

Respondent's cross-motion is denied.

## I.    BACKGROUND

      Respondent is a New York corporation that sub-contracts to install epoxy flooring.

Respondent signed a Collective Bargaining Agreement ("CBA") with the New York City District

Council Carpenters f/k/a District Council of New York City and Vicinity of the United

Brotherhood of Carpenters and Joiners of America on May 29, 2009. The CBA automatically

renewed each year in the absence of notice by either party of intent to renegotiate. At all relevant

times, the CBA was in effect. The CBA required Respondent to make certain payments to fringe

benefit trust funds on behalf of all its carpenter employees. It also allowed Petitioners to audit

---

[1] Petitioners are the Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, Trustees of the New York City Carpenters Relief and Charity Fund, the New York City and Vicinity Carpenters Labor-Management Corporation (a not-for-profit corporation), and the New York City District Council Carpenters (the "Union").

Respondent's books and records to ensure that the required contributions were made.   Under the

CBA, any disputes are subject to final and binding arbitration as follows:

> Should any dispute or disagreement arise between the parties hereto . . .
> concerning any claim arising from payments to the Fund of principal and/or
> interest which is allegedly due, either party may seek arbitration of the dispute
> before the impartial arbitrator designated hereunder by filing a notice of intent to
> arbitrate in writing . . . and serving a copy of said notice on the Employer . . . . The
> arbitrator shall have full and complete authority to decide any and all issues raised
> by the submission and to fashion an appropriate remedy including, but not limited
> to, monetary damages.  The arbitrator's award in this regard shall be final and
> binding upon the parties hereto and the individual Employer . . . and shall be
> wholly enforceable in any court of competent jurisdiction.

Petitioners conducted an audit of Respondent, during which the auditor determined that

Respondent had failed to report and make contributions in the principal amount of $5,248.80.

Respondent disputed these findings and did not remit the contributions.  On or around December

20, 2012, Petitioners sent notice of their intent to submit the matter for arbitration.  The Office of

the Impartial Arbitrator sent a Notice of Hearing on December 27, 2012, to Petitioners and to

Respondent via regular and certified mail.

Respondent claims that it was not properly informed of the arbitration hearing because

notice was sent to the wrong address.  Although Respondent had moved to New Jersey,

Petitioner's notice of intent to arbitrate and the arbitrator's notice of hearing were sent to

Respondent's former address in Briarcliff Manor, New York.  Respondent did not appear at the

arbitration hearing on March 5, 2013.  At the hearing, the arbitrator received testimony from the

auditor, reviewed the CBA, the auditor's summary report and calculations of the proposed award.

The arbitrator found Respondent in default on March 8, 2013, and awarded Petitioners

$15,863.43, plus 5.25% interest from the date of the award.

On April 24, 2013, Petitioners initiated a prior suit in the Southern District of New York

to confirm the arbitration award.  Before any answer or other response to the complaint,

Petitioners and Respondent filed a stipulation of dismissal without prejudice in that case on March 31, 2014.  The stipulation tolled any statute of limitations applicable to the claims of Petitioners against Respondent to confirm the arbitration award from April 25, 2013, through March 26, 2014.  It is unclear from the record the circumstances that prompted the dismissal and whether any settlement payment was made or agreed upon.

On February 3, 2015, Petitioners commenced this action to confirm the arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9; section 301 of the Labor Management Relations Act of 1947 ("LMRA") as amended, 29 U.S.C. § 185; and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3).  On June 25, 2015, Respondent, through new counsel, filed an answer and counterclaim, asserting that the arbitration award should be vacated.

## II.    LEGAL STANDARD

Enforcement of an arbitration award issued under a collective bargaining agreement "is governed by section 301 of the LMRA."  *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, Nos. 15-2801, 15-2805, 2016 WL 1619883, *5 (2d Cir. Apr. 25, 2016) (citing *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)); *see also Coca–Cola Bottling Co. of N.Y. v. Soft Drink & Brewery Workers Union Loc. 812 Int'l Bhd. of Teamsters*, 242 F.3d 52, 53-55 (2d Cir. 2001) (holding that in cases brought under the LMRA, the FAA does not apply).   Section 301 "does more than confer jurisdiction," serving as a source of federal "substantive law . . . which the courts must fashion from the policy of our national labor laws."  *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 455-456 (1957).  This body of law is "analytically distinct from" that of the FAA and may draw from the FAA "for guidance alone."  *Coca–Cola*, 242 F.3d at 54.  Federal courts will also look to applicable state law to fill the

interstices in federal law, borrowing no more from state law than necessary. *Loc. 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) (quoting *West v. Conrail*, 481 U.S. 35, 39–40 (1987)).

Judicial review of an arbitration award under the LMRA is "very limited" to comport with the federal policy promoting "industrial stabilization through the collective bargaining agreement," with an emphasis on private resolution of labor disputes. *Nat'l Football League Mgmt. Council*, 2016 WL 1619883, at *5-*6 (internal citations and quotation marks omitted). Courts will examine an arbitrator's decision "only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* at 6. A reviewing court is "not authorized to review the arbitrator's decision on the merits . . . ." *Id.* The arbitrator need only explain his reasoning "in terms that offer even a barely colorable justification." *Burns Int'l Sec. Servs., Inc., v. United Plant Guard Workers of Am.*, 47 F.3d 14, 17 (2d Cir. 1995) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)). "[U]nless the award is procured through fraud or dishonesty, a reviewing court is bound by the arbitrator's factual findings, interpretation of the contract and suggested remedies." *Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37–38 (1987)). "As long as the award draws its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of industrial justice, it must be confirmed." *Nat'l Football League Mgmt. Council*, 2016 WL 1619883, at *6 (internal quotation marks omitted) (citing *Niagara Mohawk Power Corp.*, 143 F.3d at 714).

### III.    DISCUSSION

#### A.    Statute of Limitations

The main action to confirm the arbitration award is timely filed, but Respondent's cross-motion to vacate is time-barred.  "Under federal law, 'a claim generally accrues once the plaintiff knows or has reason to know of the injury which is the basis of his action.'"  *Wall v. Constr. & Gen. Laborers' Union, Loc. 230*, 224 F.3d 168, 175-176 (2d Cir. 2000) (citing *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)).

"Because Congress did not provide a statute of limitations for suits brought under § 301, this Court determines the statute of limitations for the federal cause of action by looking to the most appropriate state statute of limitations."  *Parker Meridien*, 145 F.3d at 88.  Under New York law, a party must file suit to confirm an arbitration award "within one year after its delivery to him."  N.Y. C.P.L.R. § 7510 (McKinney 2016); *see also Loc. Union No. 1 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. of the U.S. & Canada v. Bass*, No. 13 Civ. 3837, 2015 WL 1402884, at *4 (E.D.N.Y. Mar. 25, 2015) ("[S]ince the LMRA borrows from state law for the applicable statute of limitations, a party has one year after delivery of an arbitration award in which to seek confirmation . . . .") (internal citations omitted).

The main action is timely.  The record does not disclose the exact date on which Petitioners received the award, but the arbitrator rendered the award on March 8, 2013.  The complaint in the first action to confirm the arbitration award was filed on April 24, 2013, 47 days after the date of the arbitrator's award.  This action was filed on February 2, 2015.  However, the stipulation of dismissal in the first case seeking to confirm the award expressly tolled the statute of limitations from April 25, 2013, through March 26, 2014.  Petitioners filed this action 313 days after March 27, 2014, and, accounting for the tolling, 360 days after the date of the award.  As

5

Petitioners filed the action within one year after the award was delivered, the action is timely.

Claims brought under § 301 to vacate an award also use the period provided in the relevant state law statute of limitations, which in this case is ninety days from the date of delivery of the award. *Parker Meridien*, 145 F.3d at 88; *see also* N.Y. C.P.L.R. § 7511(a) (McKinney 2016). In employing the state statute of limitations, the court applies federal law, not state law, and does not necessarily incorporate other portions of the state law. *See Parker Meridien*, 145 F.3d at 88. In deciding when it is necessary to borrow from state law, "it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." *Id.* (quoting *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 367 (1977)).

Here, Respondent's counterclaim to vacate the arbitration award is time barred. Because Respondent presses this counterclaim long after the ninety-day statute of limitations lapsed and could have filed a timely claim to vacate, his effort to vacate at this late date is foreclosed. Although the record is unclear when Respondent received the award, it is undisputed that Respondent was aware of the award by the time Respondent entered into the stipulation of dismissal without prejudice in the first federal action on March 31, 2014. Even assuming generously that Respondent did not know of the award until the date of the stipulation, the 90-day statutory period in which it could have petitioned to vacate the award ended on June 29, 2014, at the latest. After Petitioners commenced this case, Respondent filed its answer and counterclaim to vacate on June 25, 2015, approximately one year after the period for filing had ended. Respondent's motion is therefore denied as untimely.

In *Parker Meridien*, the Second Circuit explicitly addressed whether the LMRA incorporates the state law principle allowing defendants who have failed to timely challenge an

6

arbitration award nonetheless to "assert affirmative defenses challenging the award's enforceability." *Parker Meridien*, 145 F.3d at 88; *accord Loc. Union No. 38, Sheet Metal Workers' Int'l Ass'n AFL-CIO v. Custom Air Sys., Inc.*, 357 F.3d 266, 267 (2d Cir. 2004) (internal citations omitted) ("In *Parker Meridien*, we held that the grounds for vacating an arbitration award . . . may not be raised as an affirmative defense after the period of ninety days as provided by N.Y. C.P.L.R. § 7511(a) has lapsed."); *Trustees of Int'l Union of Operating Engineers Loc. 30 Benefits Funds v. Nyack Hosp.*, 975 F. Supp. 2d 365, 376 n.10 (S.D.N.Y. 2013) ("[T]he general rule is that a defendant must bring a motion to vacate an arbitration award for lack of jurisdiction within ninety days of the issuance of the award . . . .").

While the mismatch between allowing a party one year to confirm an arbitration award but another party only ninety days to vacate in some cases may seem inequitable, important federal interests underpin this result.  In *Parker Meridien*, the Second Circuit held that federal law does not incorporate the state common law principle because doing so would "be at loggerheads with the role of arbitration in the LMRA" to promote the resolution of labor conflicts "quickly and effectively through arbitration."  *Parker Meridien*, 145 F.3d at 89.  As the Eighth Circuit explained, the principle that "failure to file a timely motion to vacate an award . . . typically bars a party from later raising defenses to the confirmation of the award that could have been raised in the vacation motion" is "intended to enhance the speed and effectiveness of arbitration, to provide fair review of the arbitrator's decision, and to preclude the losing party from dragging out proceedings in order to dilute the integrity of the arbitration award."  *Turner v. United Steelworkers of Am., Local 812*, 581 F.3d 672, 675-676 (8th Cir. 2009) (internal citations and quotation marks omitted) (quoting *Teamsters Loc., No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 277 (7th Cir. 1989)); *see also Parker Meridien*, 145 F.3d at 89 (discussing and incorporating by

analogy the underlying interest of the arbitration mechanism in the FAA context, noting "[t]he role of arbitration as a mechanism for speedy dispute resolution disfavors delayed challenges to the validity of an award . . . . When the three month limitations period has run without vacation of the arbitration award, the successful party has a right to assume the award is valid and untainted, and to obtain its confirmation in a summary proceeding." (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 177 (2d Cir. 1984))).

Respondent also specifically asserts that it has a meritorious claim and that Petitioners should be "equitably estopped" from asserting the statute of limitations as a defense to its counterclaim. While Respondent cites to state equitable estoppel doctrine, the substantive law that applies is federal law. *See Lincoln Mills*, 353 U.S. at 455. "A defendant may be equitably estopped from asserting the statute of limitations 'in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused [the plaintiff] to delay in bringing his lawsuit.' . . . To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995) (discussing equitable estoppel in a "hybrid" claim under the LMRA and National Labor Relations Act) (internal citations omitted).

Respondent argues that it is entitled to equitable estoppel because Petitioners allegedly misled Respondent into thinking the matter was settled by agreeing to the stipulation of dismissal without prejudice and then waiting almost one year after the stipulated tolling period ended to reinstitute a suit to confirm. However, the record contains no evidence that Petitioner made misrepresentations that caused Respondents' failure to take timely action. Moreover, the

8

stipulation explicitly states that it is without prejudice and tolled the statute of limitations only until March 26, 2014.  Respondent's equitable estoppel argument therefore fails.

### B.      Fairness

Respondent repeatedly returns to one central claim -- that it did not receive notice of the arbitration, and that fairness necessitates that the matter should be remanded to the arbitrator to be reheard.  The FAA provides a narrow exception for vacating an award where "fundamental fairness is violated."  *Nat'l Football League Mgmt. Council*, 2016 WL 1619883, at *14 (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)).  Although the FAA does not apply to this arbitration, which falls under the LMRA, federal courts often look to the FAA for guidance.  The Second Circuit has explicitly not decided whether "the free-floating procedural fairness standard of the FAA ought to be imported to . . . review of arbitrations conducted pursuant to the LMRA."  *Nat'l Football League Mgmt. Council*, 2016 WL 1619883, at *14 n.13 (internal quotation marks and citations omitted).  To the extent that Respondent's argument may be construed as a "fundamental fairness" claim, this Court also does not decide whether fundamental fairness standards should be incorporated into review of awards under the LMRA because the result would be the same under the facts of this case.

Here, whether or not Respondent received adequate notice of the arbitration *hearing*, Respondent had timely knowledge of the arbitration *award* and could have timely moved to vacate it, but failed to do so.  The LMRA "establishes a federal policy of promoting industrial stabilization through the collective bargaining agreement, with particular emphasis on private arbitration of grievances."  *Nat'l Football League Mgmt. Council*, 2016 WL 1619883, at *5 (internal citations and quotation marks omitted).  The LMRA also evinces a federal interest in resolving "labor conflicts quickly and effectively through arbitration," *Parker Meridien*, 145 F.3d

at 89, and limiting the time in which to challenge an award with the intent to "preclude the losing party from dragging out proceedings in order to dilute the integrity of the arbitration award." *Id.* (quoting *Teamsters Loc. No. 579*, 882 F.2d at 277).  In this case and the prior federal action, Respondent failed to act quickly to object to the arbitrator's decision and is therefore barred from now attempting to vacate the award.  To find for Respondent on fairness standards borrowed from the FAA on these facts would conflict with the federal interests underlying the LMRA. Furthermore, the evidence does not support a finding of fundamental unfairness in this particular case where the notice of the arbitration was sent to Respondent's address as it appears on the CBA, no evidence shows that Petitioner ever received an official notification of Respondent's change of address and Respondent failed to update its official service of process address with the New York Department of State.

The federal courts are constrained by the LMRA and have limited ability to review arbitration awards.  "[O]ur task is simply to ensure that the arbitrator was even arguably construing or applying the contract and acting within the scope of his authority and did not ignore the plain language of the contract."  *Nat'l Football League Mgmt. Council*, 2016 WL 1619883, at *6 (internal citations and quotation marks omitted).  Here, where Respondent had at minimum constructive notice of the arbitration award and failed to timely contest the award, the Court is constrained from vacating the award.

### C.    The Award

The petition seeking confirmation of the arbitration award is granted.  The arbitrator acted within the scope of his authority and explains his reasoning.  The CBA grants the arbitrator "full and complete authority to decide any and all issues raised by the submission and to fashion an appropriate remedy," which may include monetary damages.  The CBA also requires any

judgement include reasonable attorneys' fees and the cost of the action.  The award of damages and arbitration costs is supported by the record and cannot be attributed to any bias or irrational decision making on the part of the arbitrator.  The arbitrator reviewed the CBA and heard testimony from the auditor detailing the delinquencies in payments to fringe benefit funds discovered during the audit, the accounting method used during the audit, and the computation of the amount of each alleged delinquency.  Because the arbitrator acted within the scope of his authority and the award of $15,863.43 plus interest is supported with more than a "barely colorable justification," it is confirmed.

> **D.    Attorneys' Fees and Costs**

Both the CBA and ERISA authorize reasonable attorneys' fees and costs for actions regarding delinquent funds.  *See* 29 U.S.C. § 1132(g).  Petitioners' application for attorneys' fees and costs for the present action in the total amount of $12,925.27 is granted.  Petitioners' counsel documents 51 hours of work at $225 and $300 per hour and 7.7 hours of work by paralegals at $100 per hour, which amounts to $12,252.50.  They also seek reasonable costs of $672.77 for filing this action and for service.

## IV.    CONCLUSION

For the foregoing reasons, the motion to confirm the arbitration award is GRANTED, and Respondent's cross-motion is DENIED.  The Clerk of Court is directed to enter judgment in

favor of Petitioners of $15,863.43 plus 5.25% per annum interest beginning March 8, 2013, to the

date of payment; and $12,925.22 as attorneys' fees and costs for the present action without

interest.  The Clerk is directed to close the motions at Docket Nos. 38 and 47 and to close the

case.

       SO ORDERED.


Dated: June 6, 2016
      New York, New York

                                  LORNA G. SCHOFIELD
                         UNITED STATES DISTRICT JUDGE